UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

BRIAN DEMPSEY, on behalf of himself and all other similarly situated individuals,

    Plaintiff,

    vs.

SMITH'S FOOD & DRUG CENTERS, INC., and DOES 1 through 50, inclusive,

    Defendants.

Case No. 3:24-cv-00269-ART-CSD

ORDER ON PLAINTIFF'S MOTION FOR NOTICE (ECF No. 8) AND DEFENDANT'S MOTION TO STAY (ECF No. 19)

Plaintiff Brian Dempsey brings this action on behalf of himself and others similarly situated alleging the following claims: (1) failure to pay overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 on behalf of Plaintiff and FLSA collective action members; (2) failure to pay overtime in violation of NRS 608.018 on behalf of Plaintiff and Nevada class members; (3) failure to pay all wages due and owing under NRS 608.020-050 on behalf of Plaintiff and a "continuation wage" subclass of the Nevada class, and (4) for injunctive/declaratory relief on behalf of the Nevada class.

Before the Court are two motions. Plaintiff filed a motion for circulation of notice pursuant to 29 U.S.C. § 216(b) (ECF No. 8), asking the Court to approve circulation of notice to potential opt-in Plaintiffs within the FLSA class. Defendant subsequently filed a motion to stay proceedings (ECF No. 19), asking the Court to stay all proceedings in this action pending the outcome of the Ninth Circuit's decision in *Harrington v. Cracker Barrel Old Country Stores, Inc.*, Nos. 23-15650 and 24-1979.

For the reasons discussed below, the Court grants Defendant's motion to stay proceedings in part. The Court will stay proceedings only as to the potential out-of-state opt-in plaintiffs in the FLSA class, however, this action will proceed as to the potential in-state opt-in FLSA plaintiffs and as to Plaintiff's state law claims. Additionally, the Court grants in part Plaintiff's motion for circulation of notice. Circulation of notice is granted as to the potential in-state opt-in FLSA plaintiffs only, in accordance with the Court's order granting a stay as to potential out-of-state FLSA plaintiffs. Finally, the Court grants in part Plaintiff's request for equitable tolling of the statute of limitations as to the FLSA class.

## I.    BACKGROUND

Plaintiff alleges the following facts relevant to the pending motions: Smith's owns and operates 141 grocery stores in seven states (Arizona, Idaho, Montana, New Mexico, Nevada, Utah, and Wyoming). (ECF No. 1 at 3.) Plaintiff has worked at the Smith's Gardnerville, NV location as an Assistant Store Manager ("ASM") since mid-2022. (*Id.* at 3-4.) There are approximately 282 full-time equivalent ASMs employed by Smith's, all of whom are classified as exempt from overtime. (*Id.* at 5.) Plaintiff has also worked at other Smith's locations as an ASM on a fill-in basis. (*Id.* at 4.) Because Plaintiff is classified as an overtime exempt employee, he is paid a fixed salary regardless of the hours he works in a week. (*Id.*) Plaintiff routinely works a total of 60 hours per week. (*Id.*) He spends an estimated 90% of his time as an ASM doing non-exempt "clerk" work, and 10% of his time doing "administrative" work, such as merchandise orders and employee scheduling. (*Id.*) He alleges that these estimates also apply to the work he has done filling in at other locations. (*Id.*) Plaintiff alleges that he is informed and believes that other ASMs work a similar number of hours per week. (*Id.* at 5.)

## II.   DEFENDANT'S MOTION TO STAY PROCEEDINGS

Plaintiff's complaint brings an FLSA claim for failure to pay overtime wages on behalf of himself and "All Assistant Store Managers (ASMs), or other similar

job title, employed by Defendant at any time during the relevant time period alleged herein." (ECF No. 1 at 6.) The proposed "FLSA Class" thus comprises potential opt-in plaintiffs from several different states. According to Defendant, approximately 75% of the potential FLSA opt-in plaintiffs live outside of Nevada.

There is a split between the circuit courts as to whether a federal district court has personal jurisdiction over out-of-state opt-in plaintiffs in FLSA collective actions who lack minimum contacts with the forum state. The Third, Sixth, Seventh, and Eighth Circuits have held that district courts lack personal jurisdiction over said opt-in plaintiffs, while the First Circuit found that personal jurisdiction did exist.[1] This same issue is before the Ninth Circuit in *Harrington v. Cracker Barrel Old Country Stores, Inc.*, Nos. 23-15650 and 24-1979.[2] Specifically, the question before the Ninth Circuit is "[w]hether *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 265, 137 S. Ct. 1773, 198 L.Ed.2d 395 (2017), prevents a District Court from sending notice under Section 216(b) of the FLSA to individuals over whom the Court lacks specific personal jurisdiction." *Harrington v. Cracker Barrel Old Country Store Incorporated*, 713 F. Supp. 3d 568, 585 (D. Ariz. 2024) (certifying question for interlocutory appeal).

Defendant argues that this case should be stayed pending the Ninth Circuit's decision in *Harrington*, as the outcome will determine whether there is personal jurisdiction over the potential out-of-state opt-in plaintiffs in this case, and thus whether notice can be sent under § 216(b) of the FLSA. Plaintiff does

---

[1] *Vallone v. CJS Sols. Grp.*, LLC, 9 F.4th 861, 865–66 (8th Cir. 2021); *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 397 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 2777 (2022); *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 370–71 (3d Cir. 2022); *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 721 (7th Cir. 2024); *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 93 (1st Cir. 2022).

[2] Oral argument before the Ninth Circuit is scheduled in *Harrington* for February 7, 2025. *See* https://www.ca9.uscourts.gov/calendar/monthly_sittings/146503.html.

1    not contest that *Harrington* will have an impact on this action but argues that
2    that the Ninth Circuit's decision can be implemented after it is issued, and a stay
3    is not necessary.

4    **A. APPROPRIATE STAGE TO CONSIDER PERSONAL JURISDICTION**

5        As a preliminary matter, Plaintiff argues in his reply to his motion for
6    circulation of notice that consideration of personal jurisdiction is premature at
7    this stage because granting of notice is not an exercise of personal jurisdiction
8    over potential opt-in plaintiffs. Under this logic, a stay at this point would not be
9    necessary as personal jurisdiction would be considered at a later stage. The Court
10   declines to consider this question, as the same question is also before the Ninth
11   Circuit in *Harrington*. The question of "[w]hether *Bristol-Myers*...prevents a
12   District Court from sending notice under Section 216(b) of the FLSA to individuals
13   over whom the Court lacks specific personal jurisdiction" necessarily
14   encompasses a question about the appropriate timing for consideration of
15   personal jurisdiction. *Harrington*, 713 F. Supp. 3d at 585. As the Court stays this
16   action as to out-of-state opt-in FLSA plaintiffs, the Court will wait for the Ninth
17   Circuit's guidance on this question as well.

18   **B. LEGAL STANDARD**

19       A court should consider three non-exclusive factors when deciding whether
20   to stay a case: (1) "the possible damage which may result from the granting of a
21   stay"; (2) "the hardship or inequity which a party may suffer in being required to
22   go forward"; and (3) "the orderly course of justice measured in terms of the
23   simplifying or complicating of issues, proof, and questions of law." *Ernest Bock,*
24   *LLC v. Steelman*, 76 F.4th 827, 842 (9th Cir. 2023), *cert. denied,* 144 S. Ct. 554
25   (2024) (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).
26   The last factor, also referred to as "judicial efficiency," is not alone sufficient to
27   stay proceedings. *In re PG&E Corp. Securities Litig.*, 100 F.4th 1076, 1085 (9th
28   Cir. 2024). Rather, a court must weigh the relative hardships that a stay might

cause. *Id.* at 1087.

## C. ANALYSIS

### 1. Possible Damage of Granting a Stay

The first factor to consider is the possible damage to a party of granting a stay. *Ernest Bock*, 76 F.4th at 842. Defendant argues that the damage to Plaintiff resulting from a stay in this case will be minimal because it has agreed to toll the statute of limitations during the stay. Plaintiff responds that any stay will be lengthy due to the possibility that *en banc* review and/or an appeal to the Supreme Court is sought after the Ninth Circuit issues a decision in *Harrington*. Additionally, Plaintiff argues that the statute of limitations is only one of several harms which they will suffer from if a stay is granted, including preservation of evidence and remembrance of facts, and the increased difficulty of locating potential opt-in plaintiffs as time passes.

Defendant has addressed Plaintiff's concerns about the length of the stay in this case, clarifying that they seek a stay of the proceedings only until the Ninth Circuit issues a decision in *Harrington*. (ECF Nos. 31 at 2-3; 31-1.)  The parties will be ordered to file a status update within 14 days of the Ninth Circuit's issuing a decision in *Harrington*. *See Stephens v. Comenity*, LLC, 287 F. Supp. 3d 1091, 1098 (D. Nev. 2017). Further, because Defendant has agreed to toll the statute of limitations, the Court finds that this factor weighs in favor of granting a stay. *Harrington*, 713 F. Supp. 3d at 588. While the Court acknowledges Plaintiff's concerns about other forms of prejudice stemming from the passage of time, the Court finds that the third factor – orderly course of justice – outweighs these potential prejudices.

### 2. Hardship or Inequity if a Stay is Not Granted

Defendant argues that they will suffer irreparable harm if the stay is not granted because both parties will devote substantial resources to litigating the same personal jurisdiction issue before the Ninth Circuit in *Harrington*.

Additionally, if the Court then grants Plaintiff's motion for circulation of notice, a notice of the lawsuit will be sent to Smith's ASMs across all seven states, even though the Court may lack personal jurisdiction over them, creating confusion and wasting resources.

Plaintiff responds that harm to Defendants if the stay is denied is minimal because even if the Ninth Circuit decides that there is no personal jurisdiction over out-of-state opt-in Plaintiffs in FLSA actions after notice in this case is sent, the Court could simply strike the out-of-state plaintiffs from this action and instruct those plaintiffs to proceed with their claims in their home state.

As to Defendant's argument that the sending of notice which must later be stricken could sew confusion, the Court agrees but notes that at oral argument it was clarified that Plaintiff – not Defendant – bears the cost and administrative burden of sending notice under § 216(b). However, while "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity" for purposes of a stay, in this case, the denial of a stay here would cause both parties to engage in significant discovery regarding opt-in plaintiffs, the majority of whom may not be within this Court's jurisdiction.[3] *Singer v. Las Vegas Athletic Clubs*, 376 F. Supp. 3d 1062, 1071 (D. Nev. 2019) (quoting *Hawai'i v. Trump*, 233 F. Supp. 3d 850, 854 (D. Haw. 2017)); *see also Harrington*, 713 F. Supp. 3d at 587-88 (granting stay pending appeal where Defendant would incur significant discovery expenses should certification process proceed, which may be narrowed on appeal).

While both parties have identified hardships as to their respective positions, the final factor, discussed below, ultimately weighs heavily in favor of granting a stay.

//

---

[3] At oral argument, Plaintiff stated that after notice is granted and sent, the parties would engage in significant discovery.

### 3. Orderly Course of Justice

A district court may stay a case "'pending resolution of independent proceedings which bear upon the case,'" *PG&E*, 100 F.4th at 1085 (quoting *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983)). When determining if such a stay is appropriate, "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Onemata Corp. v. Rahman*, No. 2:23-CV-00785-JAD-MDC, 2024 WL 3202559, at *3 (D. Nev. June 26, 2024) (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979)).

A stay pending the Ninth Circuit's decision in *Harrington* will promote judicial efficiency. The Ninth Circuit's decision will provide "important and material guidance" to the Court regarding both (1) whether personal jurisdiction should be considered at the motion for notice stage, and (2) whether this Court has personal jurisdiction over out-of-state opt-in plaintiffs in FLSA actions, which comprise a majority of the proposed FLSA class. *Arminas Wagner Enterprises, LLC v. Ohio Sec. Ins. Co.*, No. 221CV897JCMDJA, 2022 WL 980602, at *2 (D. Nev. Mar. 31, 2022). The issue presented in *Harrington* is identical to the issue that, absent a stay, this Court would be asked to decide. *PG&E*, 100 F.4th at 1086-87 (district court did not abuse discretion in determining that independent proceedings' determination of identical issues would promote efficient adjudication); *Stephens*, 287 F. Supp. 3d at 1098 (granting stay where issues raised in independent pending appeal were "key issues" in present case); *Arminas*, 2022 WL 980602, at *2 (granting stay where issues raised in independent pending appeal were nearly identical to present action). Finally, while there is no way to predict when the Ninth Circuit will issue a decision, oral argument has been scheduled for next month, therefore, a decision is likely in the near future. *See Arminas*, 2022 WL 980602, at *2. The Court therefore stays

this action until the Ninth Circuit issues a decision in *Harrington*.

**4. Only a Partial Stay is Warranted**

Because the outcome of *Harrington* affects only personal jurisdiction over potential out-of-state opt-in FLSA plaintiffs, the Court finds that it is not appropriate to stay this action in its entirety. The Court stays proceedings only as to potential out-of-state opt-in FLSA plaintiffs. Plaintiff's FLSA claim may proceed as to potential in-state opt-in FLSA plaintiffs, and Plaintiff's state law claims may proceed as to all potential class members.

**III. PLAINTIFF'S MOTION FOR CIRCULATION OF NOTICE**

In granting a motion for circulation of notice, a court first must grant preliminary certification of an FLSA class. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018). Plaintiff's motion for circulation of notice seeks preliminary certification of the following group: "All Assistant Store Managers (ASMs), or other similar job title, employed at any time during the relevant time period alleged herein." (ECF No. 8 at 3.) Because the Court stays this action as to any potential out-of-state opt-in FLSA plaintiffs, the Court will consider Plaintiff's motion for circulation of notice only as to potential opt-in FLSA plaintiffs within the state of Nevada.

**A. LEGAL STANDARD**

The Ninth Circuit addressed the preliminary certification standard for FLSA collective actions in *Campbell v. City of Los Angeles*, applying a two-step certification process. 903 F.3d at 1109. "First, at or around the pleading stage, plaintiffs will typically move for preliminary certification." *Id.* This allows for the sending of Court-approved notice to workers who may wish to join the litigation. *Id.* at 1101. The standard for preliminary certification is a showing that putative class members are "similarly situated." 29 U.S.C. 216(b); *Id.* at 1100. The Ninth Circuit in *Campbell* stated that the "level of consideration is lenient…. sometimes articulated as requiring 'substantial allegations,' sometimes as turning on a

'reasonable basis,' but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings." 903 F.3d at 1109 (internal citations omitted).

At the second step, the defendant employer can move for "decertification" of the collective action "for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point." *Id.* At this stage the court will "take a more exacting look at the plaintiffs' allegations and the record," which "can resemble a motion for partial summary judgment on the similarly situated question." *Id.* (internal quotation marks omitted).

Defendant argues that the Ninth Circuit in *Campbell* did not actually adopt the two-step certification process, and thus the Ninth Circuit hasn't affirmatively spoken on a standard for FLSA certification. Defendant further asserts that the Court should reject the two-step preliminary certification standard discussed in *Campbell* because it originated pre-*Twombly* and thus does not meet *Twombly's* plausibility pleading requirements. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Instead, Defendant proposes that the Court adopt the Fifth Circuit's approach in *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430, 443 (5th Cir. 2021), which requires a court to "rigorously scrutinize" whether the parties are similarly situated after some discovery has taken place, eliminating the need for two certification steps.

This exact argument was previously rejected in the lower court's decisions in *Harrington*. In its order on plaintiffs' motion for conditional certification, the court stated, "Cracker Barrel provides no argument for this proposition and does not cite to any court within this circuit that has done so...[t]he Court remains unpersuaded and will adhere to the binding Ninth Circuit approach for collective certification under the FLSA as recently clarified in *Campbell*, 903 F.3d at 1108–09." *Gillespie v. Cracker Barrel Old Country Store Inc.*, No. CV-21-00940-PHX-DJH, 2023 WL 2734459, at *7 (D. Ariz. Mar. 31, 2023), *amended on*

reconsideration in part sub nom. *Harrington v. Cracker Barrel Old Country Store Inc.*, 713 F. Supp. 3d 568 (D. Ariz. 2024). In declining to certify this particular question for interlocutory appeal, the court reiterated, "[T]he Ninth Circuit has explicitly established the two-step approach to FLSA collective action certification in *Campbell*, 903 F.3d at 1108–09, which addresses 'preliminary certification' at step one and 'decertification' at step two." *Harrington v. Cracker Barrel Old Country Store Inc.*, 713 F. Supp. 3d 568, 586 (D. Ariz. 2024).

This Court agrees. The Ninth Circuit clearly established the two-step certification approach in *Campbell*, which is binding on this Court. Additionally, the standard set forth in *Campbell* does not defy *Twombly* – in fact, the Ninth Circuit states that the standard is "loosely akin to a plausibility standard." 903 F.3d at 1109. As such, the Court will assess Plaintiff's motion under the preliminary certification standard set forth in *Campbell*.

Because this action is stayed as to potential out-of-state opt-in plaintiffs, the Court considers only whether ASMs within Nevada are similarly situated. The Court does not reach the question of whether Plaintiff has presented sufficient evidence to show that Smith's ASMs across all seven states are similarly situated.

## B. ANALYSIS

"Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117. The evidence must only show that there is some "factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice." *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 926 (D. Ariz. 2010) (quoting *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1138 n. 6 (D.Nev.1999)). If plaintiffs share material factual or legal similarities, "dissimilarities in other respects should not defeat collective treatment." *Campbell*, 903 F.3d at 1114.

"At this early stage of the litigation, the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Nelson v. Wal-Mart Associates, Inc.*, No. 321CV00066MMDCLB, 2022 WL 3636488, at *2 (D. Nev. Aug. 23, 2022) (citing *Campbell*, 903 F. 3d at 1117). Here, Plaintiff relies on their complaint and a declaration from opt-in Plaintiff Toni Quinn, who worked as an ASM at the Gardnerville location from 2017 to 2023. (ECF No. 8-3.) Mr. Quinn states that, like Plaintiff, he regularly worked 60- or 70-hour work weeks as an ASM and spent an estimated 80% of his time doing non-exempt "clerk" work both at the Gardnerville location and when he filled in at other Smith's locations. (*Id.* at 2.)

The complaint alleges, and Defendants conceded at oral argument, that all ASMs employed by Smiths are classified as exempt from overtime. Thus, Smith's ASMs are subject to a common policy. While the classification of a group of employees alone does not make them "similarly situated," here there is evidence that Nevada ASMs share other similarities. *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914 (D. Ariz. 2010). Plaintiff, via the complaint, and Toni Quinn, via his declaration, allege that they both worked at the Garnerville Smith's location, as well as filling in at other locations. They allege that both at the Gardnerville location and while filling in at other locations, 80-90% of the work that they performed was comprised of non-exempt tasks. They also allege that they routinely worked more than forty hours in a work week. Thus, Plaintiff alleges and has presented evidence that there are factual similarities between store locations as to ASMs in Nevada.

Defendant argues that the Role Clarity document they submitted (ECF No. 23-5) defeats Plaintiff's argument because it shows that the number of ASMs and their job duties varies from store to store depending on the store's weekly sales volume. Defendant also argues that the declarations they submitted from other Smith's ASMs show that there are significant differences between ASM duties,

precluding preliminary certification. However, where plaintiffs share material factual or legal similarities, "dissimilarities in other respects should not defeat collective treatment." *Campbell*, 903 F.3d at 1114. Further, while the Role Clarity document does show that there are differences between some of the duties of the three types of ASMs, it also shows that there are several duties which all ASMs share. (ECF No. 23-5.) To the extent that Defendant's declarations contradict the declaration provided by Plaintiff, this at most creates genuine dispute of material fact about the merits of Plaintiff's claims, more appropriately considered at the second "decertification" step. *See Benedict v. Hewlett-Packard Co.*, No. 13-CV-00119-LHK, 2014 WL 587135, at *12 (N.D. Cal. Feb. 13, 2014) (employer's declarations "simply create a 'he-said-she-said' situation" that does not justify denying certification") (citing *Escobar v. Whiteside Const. Corp.*, No. C 08-01120 WHA, 2008 WL 3915715, at *4 (N.D. Cal. Aug. 21, 2008) (although defendant's proffered declarations contradicting plaintiff's might later negate plaintiff's claims, they did not preclude preliminary certification)).

The Court finds that Nevada ASMs are similarly situated and preliminary certification for the purposes of circulation of notice under 29 U.S.C. § 216(b) to Nevada ASMs is appropriate. The Court therefore grants preliminary certification as to all Assistant Store Managers (ASMs), or other similar job title, employed **in the state of Nevada** at any time during the relevant time period alleged herein.

### C. OBJECTIONS TO PROPOSED NOTICE

Defendant cited multiple objections to Plaintiff's proposed notice (ECF No. 8-1). The Court will order the parties to meet and confer regarding the proposed notice and file a stipulated Notice within 30 days of this order. In the event the parties cannot reach an agreement, they shall each file a proposed Notice.

### IV. EQUITABLE TOLLING

### A. Equitable Tolling During Stay

Defendant has agreed to equitable tolling of out-of-state opt-in plaintiff's

claims for the period of the stay, from the date of entry of the stay until the stay is lifted. The Court will accordingly toll the statute of limitations as to the FLSA claims of all potential out-of-state opt-in FLSA plaintiffs from the date of entry of this order until the stay expires.

**B. Equitable Tolling for Pending Motion**

Plaintiff also requests equitable tolling as to the claims of all potential FLSA opt-in plaintiffs for the period which their motion for notice was pending before the Court and during the notice period.

Equitable tolling of the statute of limitations on a claim is appropriate where a litigant can show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). Courts may equitably toll the statute of limitations period in FLSA actions. *Partlow v. Jewish Orphans' Home of S. California, Inc.*, 645 F.2d 757, 760-61 (9th Cir. 1981), *abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989).

Plaintiff notes that the statute of limitations for FLSA claims continues to run until each individual opt-in plaintiff's consent to joinder is filed with the court. 29 U.S.C. § 256. Thus, when a court does not rule on a plaintiff's motion for notice under the FLSA quickly, potential opt-in plaintiffs can suffer significant prejudice as their claims fall out of the statute of limitations period before they are notified of the action. *See e.g. Stickle v. SCI Western Mkt. Support Ctr., L.P.*, No. CV08083PHXMHM, 2008 WL 4446539, at *22 (D. Ariz. Sept. 30, 2008) ("[W]ithout tolling the statute of limitations, Plaintiffs will have lost the time between the filing of the Motions to Dismiss…until the filing of the instant Motion that they could have used to notify potential class members.").

Another court in this District has recognized that "[t]he delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary

circumstance[]' justifying application of the equitable tolling doctrine." *Small v. U. Med. Ctr. of S. Nevada*, No. 2:13-CV-00298-APG, 2013 WL 3043454, at *3 (D. Nev. June 14, 2013) (citing *Yahraes v. Rest. Associates Events Corp.*, No. 10-CV-935 SLT, 2011 WL 844963 (E.D.N.Y. Mar. 8, 2011)); *see also Stickle*, 2008 WL 4446539, at *22 (tolling statute of limitations in FLSA action while court considered defendant's pre-notice motion to dismiss). In contrast, there is no prejudice to Defendant if the statute of limitations is tolled because Defendant was aware of the potential scope of their liability when the Complaint was filed in this action. *See Small*, 2013 WL 3043454, at *4; *Stickle*, 2008 WL 4446539, at *22 (citing *Baden–Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 828 (S.D. Oh. 2007) (defendant was fully aware of their scope of potential liability on the date the suit was filed)).

The Court will thus toll the statute of limitations for the period Plaintiff's motion for notice was pending before the Court. While Plaintiff also requests tolling during the notice period, none of the case law cited by Plaintiff supports this request. Rather, the Court will toll the statute of limitations from the date Plaintiff's motion for notice was filed until the date on which Defendant provides Plaintiff with potential opt-in plaintiffs' contact information and the proposed notice is approved by the Court.[4] *See Small,* 2013 WL 3043454, at *4 (granting equitable tolling from 30 days after motion for certification was filed until date

---

[4] It is not clear at what point in litigation of an FLSA action a defendant is required to provide the potential opt-in class's contact information to plaintiff. *Soto v. O.C. Commun., Inc.*, 319 F. Supp. 3d 1165, 1166 (N.D. Cal. 2018) (noting that a number of district courts in the Ninth Circuit have held that this is not required until after notice is approved by the court). At oral argument, the parties represented that Plaintiff was not in possession of this information and would obtain it from Defendant through discovery after conditional certification and notice are granted. Because a defendant in an FLSA action gains an advantage by delaying providing contact information to plaintiff for the purpose of sending notice, equitable tolling of the period until the defendant provides this information "counter[s]" any such advantage. *Small*, 2013 WL 3043454, at *4 (citing *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 543 (N.D. Cal. 2007)).

14

defendant provided potential plaintiffs' contact information); *Misra v. Dec. One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 999 (C.D. Cal. 2008) (tolling statute of limitations until class list was produced and stipulated notice was approved by the court). If a plaintiff opts in before this date, the tolling period for that plaintiff will run from the date Plaintiff's motion for notice was filed until that plaintiff files consent to opt-in with the Court. *See Small,* 2013 WL 3043454, at *4.

## V.    CONCLUSION

It is therefore ordered that Defendant's Motion to Stay (ECF No. 19) is **GRANTED IN PART**. The proceedings are stayed, pending the Ninth Circuit's decision in *Harrington*, only as to potential out-of-state opt-in FLSA plaintiffs.

The parties are ordered to file a status update within 14 days of the Ninth Circuit issuing a decision in *Harrington*.

It is further ordered that Plaintiff's Motion for Circulation of Notice (ECF No. 8) is **GRANTED IN PART AND DENIED IN PART**, without prejudice.

Notice may be circulated as to potential in-state opt-in FLSA plaintiffs. Plaintiff is granted leave to refile this motion as to potential out-of-state opt-in FLSA plaintiffs after the stay in this case is lifted.

It is further ordered that the parties are ordered to meet and confer regarding the proposed notice and file a stipulated Notice within 30 days of this order. In the event the parties cannot reach an agreement, they shall each file a proposed Notice.

It is further ordered that, pursuant to Defendant's agreement, the statute of limitations is tolled as to the FLSA claims of all potential out-of-state opt-in FLSA plaintiffs from the date of entry of this order until the stay is lifted.

It is further ordered that Plaintiff's request for equitable tolling as to all FLSA plaintiffs is granted in part. The statute of limitations is tolled as to the FLSA claims of ALL potential opt-in FLSA plaintiffs from the date Plaintiff's motion for notice was filed until Defendant provides Plaintiff with the contact

information of potential opt-in plaintiffs and notice has been approved by the Court. If a plaintiff opts in before this date, the tolling period for that plaintiff will run from the date Plaintiff's motion for notice was filed until that plaintiff files consent to opt-in with the Court.

Dated this 28th day of January, 2025

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE