**THIERMAN BUCK**
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
325 W. Liberty Street
Reno, Nevada 89501
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiff*
*and the Putative Classes*

**COZEN O'CONNOR**
Jonathan A. Rich, Nev. Bar No. 15312
JARich@cozen.com
Jacob M. Rubinstein, *Admitted Pro Hac Vice*
jrubinstein@cozen.com
Aaron Holt, *Admitted Pro Hac Vice*
aholt@cozen.com
1180 North Town Center Drive, Suite 260
Las Vegas, Nevada 89144
Tel. (702) 470-2330
Fax. (702) 470-2370

*Attorneys for Defendant Smith's Food &*
*Drug Centers, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BRIAN DEMPSEY, on behalf of himself and all other similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>SMITH'S FOOD & DRUG CENTERS, INC., and DOES 1 through 50, inclusive,<br><br>Defendant(s). | Case No.: 3:24-cv-00269-ART-CSD<br><br>**JOINT MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT**[1] |

Plaintiff BRIAN DEMPSEY ("Plaintiff"), on behalf of himself and all other similarly

situated individuals, by and through his undersigned counsel, and Defendant SMITH'S FOOD

---

[1] On August 11, 2025, Smith's filed a Request to Redact all financial terms of the proposed Settlement Agreement and also filed a proposed order thereon. (ECF Nos. 49, 49-1.) As stated in Smith's Request, Plaintiffs take no position on Smith's Request. *Id.,* p. 2, ¶5. The Court has not ruled on Smith's Request as of this date. In order to meet the deadline to file the Preliminary Approval Motion (ECF No. 47) the Parties file this Motion for Preliminary Approval and Exhibits with the financial terms redacted. If the Court denies Smith's Request to Redact, the Parties will file unredacted versions of the Motion for Preliminary Approval and Exhibits.

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

& DRUG CENTERS, INC. ("Defendant" or "Smith's"), by and through its undersigned counsel (collectively Plaintiff and Defendant may be referred to throughout this Motion as the "Parties") hereby move this honorable Court pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") and the Fair Labor Standards Act ("FLSA") for an order:

(1)    Conditionally certifying the 29 U.S.C. § 216(b) collective and Rule 23 class for settlement purposes;

(2)    Preliminarily approving the Parties' Settlement Agreement ("Settlement"), a copy of which is attached as Exhibit 1 to the Declaration of Leah L. Jones ("Jones Dec.") filed herewith;

(3)    Approving the manner and form of Notice attached to the Settlement as Exhibit A and the proposed distribution plan to class members; and

(4)    Setting a fairness hearing for final approval of the Settlement no earlier than one hundred and fifty (150) days following preliminary approval of the Settlement.

This Motion is based on the following Memorandum of Points and Authorities in support hereof, the declarations filed in support of this Motion and all accompanying exhibits, pleading papers and records on file herein, all matters upon which judicial notice may be taken, any oral argument that may be presented, and upon such other matters the Court deems just and necessary.

Dated:  August 15, 2025

**THIERMAN BUCK**

*/s/    Leah L. Jones*
Joshua D. Buck, Nev. Bar No. 12187
Leah L. Jones, Nev. Bar No. 13161

*Attorneys for Plaintiff
and the Putative Classes*

Dated:  August 15, 2025

**COZEN O'CONNOR**

*/s/    Jacob M. Rubenstein*
Jonathan A. Rich, Nev. Bar No. 15312
Jacob M. Rubinstein, *Admitted Pro Hac Vice*
Aaron Holt, *Admitted Pro Hac Vice*

*Attorneys for Defendant Smith's Food & Drug Center, Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

This is an employment wage and hour collective and class action based upon Defendant Smith's alleged failure to pay its Assistant Store Managers ("ASMs") overtime wages in violation of federal and Nevada state laws due to Defendant's alleged policy and practice of misclassifying its ASMs as overtime exempt. Defendant denies Plaintiff's allegations.

Plaintiff filed this wage and hour collective and class action for unpaid wages on June 25, 2024, alleging the following four (4) causes of action on his behalf and on behalf of all similarly situated individuals: (1) Failure to Pay Overtime in Violation of 29 U.S.C. § 207; (2) Failure to Pay Overtime in Violation of NRS 608.140 and 608.018; (3) Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.140 and 608.020-050; and (4) Injunctive Relief. Opt-in plaintiff Toni Quinn ("Quinn") joined this action on July 10, 2024. (ECF No. 5).

On August 16, 2024, Plaintiff Dempsey filed his Motion for Circulation of Notice Pursuant to 29 U.S.C. § 216(b) (ECF No. 8, "216(b) Motion") accompanied by supporting declarations from himself and opt-in plaintiff Quinn. Defendant filed its Answer to the Collective and Class Action Complaint on August 19, 2024. (ECF No. 9). Prior to filing a response to Plaintiff's 216(b) Motion, Defendant filed a Motion to Stay Proceedings on September 18, 2024 (ECF No. 19, "Motion to Stay"). Defendant's Motion to Stay requested a stay of this action pending a decision in *Harrington v. Cracker Barrell Old Country Stores, Inc.*, Nos. 23-15650 and 24-1979 in the United States Court of Appeals for the Ninth Circuit to address a possible jurisdictional issue related to potential out-of-state opt-in plaintiffs. After full briefing of Plaintiff's 216(b) Motion and Defendant's Motion to Stay and oral argument on January 7, 2025, this Court issued an order on January 28, 2025 partially granting Defendant's Motion to Stay only as to potential out-of-state FLSA opt-in plaintiffs and partially granting Plaintiff's 216(b) Motion as to potential in-state FLSA opt-in plaintiffs. (ECF No. 37). On May 16, 2025, the Court approved Notice to be sent to potential in-state FLSA opt-in plaintiffs. (ECF No. 45).

/ / /

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

However, prior to the circulation of any notice pursuant to 29 U.S.C. § 216(b) to any potential opt-in FLSA plaintiffs, the Parties ultimately reached an agreement after serious arms-length direct settlement negotiations. (ECF No. 43).

## II.     SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS

The Parties' Settlement provides for significant monetary recovery on behalf of the Class[2] and releases from the Class only those claims alleged in or related to the Complaint. (Settlement § 5.1). Furthermore, the Settlement sets forth the legally appropriate mechanism for providing notice to the Class of the terms and conditions of the Settlement. (*Id.* § 4.2).

### A.     The Recovery.

The Settlement provides for a total settlement amount of $███████.[3] (*Id.* § 3.1). Out of that amount, the following approximate[4] breakdown applies:

- $███████ in estimated settlement funds to the Class ("Net Settlement Fund");
- $██████ as a service award to Plaintiff Brian Dempsey;
- $██████ as a service award to opt-in plaintiff Toni Quinn;
- $██████ in settlement administration costs;
- $███████ in attorneys' fees (1/3 of the total settlement amount); and
- $██████ in litigation costs.

(*Id.* § 3.2.)

Subject to Court approval, Defendant agrees to pay a maximum settlement amount of $███████ to cover all payments arising out of this Settlement, with the exception of Defendant's share of payroll taxes which are not included in the total settlement amount. (*Id.* §

---

[2] "Class" or "Class Members" means individuals who worked as ASMs at Smith's in the State of Nevada between June 25, 2021 and the date of the Court's Final Approval Order and who did not opt into the *Lovendahl* lawsuit. (Settlement § 1.3).

[3] *See* footnote 1, *supra.* All financial terms have been redacted throughout this Motion pending Court's decision on Smith Request to Redact. (ECF No. 49.)

[4] The dollar amounts provided are approximations based on the pending approval by this Court of Class Counsel's fees and costs, the Claims Administrator's fees, as well as the Court's approval of the Class Representatives' Service Awards. (Jones Dec. ¶ 16.)

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

3.1). Class Members who wish to participate in the Settlement and receive their share of settlement funds must timely submit a completed IRS W-9 form to the Settlement Administrator. (*Id.* § 4.2.4). The Settlement has a reversionary element, meaning that any unawarded or unclaimed[5] settlement amounts will be returned to Defendant as set forth in the Settlement. (*Id.* §§ 3.2.5, 3.4, 4.2.3).

Settlement Class Members who timely submit a completed IRS W-9 form and who do not exclude themselves from the Settlement shall be eligible to recover a share of the Net Settlement Fund, in accordance with a plan of allocation based proportionately on each Class Member's alleged unpaid overtime compensation from June 25, 2021 through the date of the Final Approval Order, according to time in position and payroll records. (*Id.* § 3.2.3). The Settlement provides that each payment to a Class Member shall constitute payment of wage claims such that they shall be subject to tax withholding and reported on an IRS Form W-2. (*Id.* § 3.3). The Settlement Administrator shall be responsible for issuing appropriate tax forms, if any, to Class Members, consistent with the Settlement. (*Id.* § 6.2). Each Class Member assumes full responsibility and liability for any employee taxes owed on their settlement payment. (*Id.* § 3.3).

**B.    The Release.**

The Settlement provides that, in consideration for the Settlement, participating Class Members, i.e. any Class Member who does not submit a timely and valid opt-out statement pursuant to Section 4.3 of the Settlement will release all claims and causes of action relating to or arising out of the facts alleged in this action and that reasonably arise or could have arisen out of the facts alleged as to the Class Members.  The release specifically states as follows:

---

[5] Although a claim form is not required from Class Members to receive their settlement shares, settlement shares will be deemed "unclaimed" pursuant to the Settlement if: (1) a Class Member fails to timely submit a completed IRS W-9 form; (2) a Class Member fails to timely cash their settlement check; or (3) a Class Member's Notice is returned as undeliverable and the Settlement Administrator is not able to obtain current contact information for that Class Member. (*Id.* §§ 3.2.5, 3.4, 4.2.3).

By operation of participating in the Settlement, each Plaintiff forever and fully releases Defendant, and its present and former managers, partners, predecessors, successors, assigns, agents, directors, officers, employees, representatives, insurers, reinsurers, attorneys, parents, divisions, subsidiaries, affiliates, benefits plans, plan fiduciaries, and/or administrators, including but not limited to The Kroger Co., and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Lawsuit (collectively, the "Released Parties"), from all claims that are based upon, or arise out of the facts, acts, transactions, occurrences, events, or omissions alleged in the Lawsuit, any potential misclassification or related action for alleged unpaid wages and/or overtime compensation, including, all wage and hour claims, rights, demands, liabilities and causes of action that were asserted or could have been asserted in the Lawsuit, under federal, state, local, or other applicable wage and hour laws by and on behalf of the Class in the Lawsuit (the "**Released Claims**"), that existed from June 25, 2021 through the date of the Final Approval Order. The Released Claims include all claims under any federal, state, and/or local wage and hour laws, including, without limitation, the FLSA, NRS 608 *et seq.*, and any state or local wage and hour statute or law, whether known or unknown, asserted or unasserted, of any kind whatsoever for unpaid overtime or minimum wages, unpaid costs, penalties, liquidated damages, punitive damages, and for all attorney fees and costs/expenses associated with Plaintiffs' Counsel's representation of Plaintiffs.

(*Id.* § 5.1). The above release language will accompany each Class Member's Settlement check, and endorsement of such check will operate as confirmation of the Class Member's release. (*Id*). Named Plaintiff Brian Dempsey and opt-in plaintiff Toni Quinn will further agree to a general release of any and all claims against Defendant as of the date of the order granting final approval of the Settlement, in consideration for their requested service awards. (*Id.* § 5.2). Nothing in the Settlement releases any claims that cannot be released as a matter of law.

**C.    The Settlement Mechanism.**

The Parties have agreed to use a third-party Settlement Administrator, Rust Consulting, to administer the Notice process and Settlement. (*Id.* § 1.18). The Settlement provides for the Settlement Administrator to send out notice explaining the terms and conditions of the Settlement to all Class Members. (*Id.* §§ 4.2, 6.2). A copy of the Notice to be approved by the Court and

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

**THIERMAN BUCK**
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

sent to class members is attached as Exhibit A to the Settlement. To request exclusion from the Settlement, a Class Member must opt out of the Settlement by submitting a written statement electing to exclude himself or herself from the Settlement as set forth in the Settlement and the Notice. (*Id.* § 4.3.1). Following mailing of the Notice, class members then have sixty (60) days to submit a completed IRS W-9 form, request to opt out of the Settlement, or comment on or object to the Settlement. (*Id.* §§ 4.2.4, 4.3.1, 4.4.1).

The Settlement further provides that, following the notice period, the Court will hold a final "fairness" hearing, no earlier than one hundred and fifty (150) days following preliminary approval of the settlement, to provide final review and approval of the Settlement. (*Id.* § 4.1.4) The Notice advises class members about the fairness hearing and their opportunity to attend the hearing and make their views known. (*Id.,* Exhibit A, Notice.) At the fairness hearing, the Parties will address any issues raised by Class Members or the Notice process itself, and the Court will have a second opportunity to review the settlement in full.

The Parties agree that, as a Rule 23 class action, this matter is subject to the notice requirements set forth in the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715(b). Accordingly, pursuant to 28 U.S.C. § 1715(b), not later than ten (10) days after filing the instant Motion, Defendant shall, through the Settlement Administrator, serve upon the appropriate State official of each State in which a class member resides, and the appropriate Federal official, a notice of the Settlement consistent with the requirements enumerated by 28 U.S.C. § 1715(b)(1)–(8). Furthermore, pursuant to 28 U.S.C. § 1715(d), the Court may not issue an order granting final approval of the Settlement earlier than ninety (90) days after service of the notice of Settlement upon the appropriate State and Federal official. Thus, the Parties respectfully request that the Court refrain from issuing its order granting final approval of the Settlement until one hundred (100) days after the filing of this Motion.[6]

---

[6] Based on the Parties' request that the Court hold a final "fairness" hearing, no earlier than one hundred and fifty (150) days following preliminary approval of the settlement, to provide final review and approval of the Settlement (*id.* § 4.1.4) this 28 U.S.C. § 1715(d), CAFA requirement will not be at issue.

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

## III.    THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT

FRCP 23(e) provides that settlement of the claims of a certified class is subject to the court's approval. In general, settlement of class actions is favored as a matter of "strong judicial policy." *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)).

Procedurally, the reviewing court's evaluation is conducted in two stages. (*Id.*). At the first stage, the court conditionally certifies a class for settlement purposes, preliminarily approves the settlement pending the "fairness hearing," and authorizes notice of the proposed class settlement to be given to the class. (*Id.* (citations omitted); *see also Manual for Complex Litigation (Fourth)* § 21.632 (2004) ("Manual for Complex Litigation") (summarizing "preliminary fairness review")). Stage two is the fairness hearing, set for a time after notice has been provided to the class and class members have had an opportunity to submit objections to the proposed settlement or to opt out of it, and the court reaches a final determination about whether the proposed settlement should be approved as a fair, adequate, and reasonable resolution of the dispute. (*Alberto*, 252 F.R.D. at 659 (citations omitted)).

Here, because this is the first stage of the Court's evaluation of the Settlement, the Parties submit that: (A) the Class should be certified for settlement purposes; (B) the Settlement should be preliminary deemed fair, reasonable, and adequate; and (C) notice to Settlement Class Members should be sent out as set forth in the Settlement.

### A.    The Proposed Settlement Class.

Pursuant to the Settlement, the Parties seek to certify the following class for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure and the FLSA:

> Individuals who worked as ASMs at Smith's in the State of Nevada between June 25, 2021 and the date of the Court's Final Approval Order and who did not opt into the *Lovendahl* Lawsuit.

(Settlement § 1.3).

### B.    The Proposed Settlement Should be Preliminarily Approved.

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

In the Ninth Circuit, settlements of complex class action lawsuits are strongly favored. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Speed Shore Corp., v. Denda,* 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."). It is within the broad discretion of the trial court to approve a class action settlement. *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982). The approval of a class action settlement takes place in two stages: preliminary approval and final approval. *West v. Circle K Stores, Inc.,* No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006). Preliminary approval of a class action settlement and notice to the class is appropriate if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. FRCP 23(e)(2); *Bellinghausen v. Tractor Supply Co.,* 303 F.R.D. 611, 619 (N.D. Cal. 2014) (citing *Cruz v. Sky Chefs, Inc.,* No. C-12-02705 DMR, 2014 WL 2089938, at *7 (N.D. Cal. May 19, 2014) (quoting *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of the notice of the certification, proposed settlement, and date of the final fairness hearing." *See In Re M.L. Stern Overtime Litigation*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864 at *3 (S.D. Cal. April 13, 2009) (quoting Manual on Complex Litigation Fourth § 21.632 (2004)). During the preliminary process, the Court simply determines "whether there is any reason to notify the class members of the proposed class settlement and to proceed with the fairness hearing." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). The Court's review is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. If there are no obvious deficiencies, and the settlement falls into the

range of possible approval, it should be preliminarily approved. *See Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1057 (9th Cir. 2008); *Alaniz v. California Processing, Inc.,* 73 F.R.D. 269, 273 (C.D. Cal. 1976).

In this matter, an expeditious decision on the papers would promote a fair, effective, and efficient administration of Notice and is in line with the past practice of this Court. While a hearing is required for final approval of a potential Settlement, no such hearing is required at the earlier preliminary approval stage. *See, e.g.*, *Nelson v. Wal-Mart Associates, Inc.*, Case No. 3:21-cv-00066-MMD-CLB (August 15, 2023 Order Granting Motion for Preliminary Approval of Class and Collective Action Settlement); *DeWeese v. ITS National, LLC*, Case No. 3:18-cv-00375-MMD-WGC (March 20, 2019 Order Granting Preliminary Approval of Class Action Settlement) (attached to the Jones Dec. at ¶ 32, as Exhibits 3 and 4, respectively). As set forth below, the proposed Settlement satisfies the standard for preliminary approval.

       1.     <u>The Settlement Falls Within the Range of Possible Approval Given the Strengths and Weaknesses of the Claims and Defenses.</u>

To grant preliminary approval, this Court must decide that the Settlement falls within the approved range for preliminary approval. *Zepeda v. Paypal, Inc.*, No. C 10-2500 SBA, 2015 WL 6746913 (N.D. Cal. Nov. 15, 2015), at *4; *Fraley v. Facebook, Inc.,* No. C 11-1726 RS, 2012 WL 5838198, (N.D. Cal. Aug. 17, 2012) at *1 n.1; *In re Tableware Antitrust Litigation*, 484 F. at , 1079. To determine whether a settlement "falls within the range of possible approval," courts consider "substantive fairness and adequacy" and "plaintiffs' expected recovery balanced against the value of the settlement[.]" *Tableware*, 484 F.Supp.2d at 1080. In determining whether the Settlement is adequate and reasonable, the Court must ultimately balance the following factors: "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel ..." *Hanlon*, 150 F.3d at 1026.

Here, the Settlement represents a significant recovery on behalf of the Class given the risks associated with this case. (Jones Dec. ¶¶ 20-23). Class Counsel represents that they have

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

conducted a thorough investigation into the facts of this case and have diligently pursued an investigation of the claims against Defendant, including, but not limited to: (i) speaking at length with opt-in Plaintiff Quinn and additional putative class members; (ii) reviewing relevant documents including employer policies and pay policies; (iii) researching the applicable law and the potential defenses; (iv) developing the arguments for class and conditional certification and other significant issues; (v) briefing and arguing respective motions for Plaintiff's Motion for 216(b) Conditional Certification and Defendant's Motion to Stay; and (vi) advocating for the rights of the putative class and collective. (*Id.*) Based on their independent investigation and evaluation, Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate and that it is in the best interest of the Settlement Class Members in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Defendant, trial risk, and appellate risk. (*Id.*)

Defendant denies any liability or wrongdoing of any kind associated with the claims alleged and contends that, but for the Settlement, this Litigation is not appropriate for class certification pursuant to FRCP 23, or any other state rule, statute, law, or provision. (Settlement § 20). Defendant asserts that the Litigation fails to meet the prerequisites necessary for class action treatment under applicable law, that it has complied with all applicable provisions of state statutory and common law. Despite these sincerely held and provable applications of law to facts, Defendant will not oppose the District Court's certification of the Settlement Class contemplated by this Agreement solely for purposes of effectuating this Settlement. (*Id.*) Other than for the sole purposes of this Settlement subject to Court approval, Defendant does not waive its objections to certification of the Settlement Class, or any other class, in this Litigation.

Thus, the Settlement represents a compromise between experienced counsel for Plaintiffs and Defendant based upon each Party's honest assessment of the legal and factual strengths as well as weaknesses coupled with costs of litigation on a class and collective basis. (*Id.*; Jones Dec. ¶ 21).

2.    All four criteria of FRCP 23(a) are met.

***FRCP 23(a)(1): The class is so numerous that joinder of all members is impracticable.***

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

"As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted). However, the key consideration is whether the facts and circumstances of this particular case render joinder impractical. *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 847 (2005) (citing *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005)). And "the numerosity requirement includes no specific numerical threshold." *Andrews Farms v. Calcot, Ltd.*, 258 F.R.D. 640, 651 (E.D. Cal. 2009) (citing *Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)); *Shuette*, 121 Nev. at 847.

Here, the settlement Class consists of approximately 160 individuals. (Jones Dec., ¶ 21.) Thus, Plaintiff submits that the numerosity criterion is satisfied. Only for purposes of approving this Settlement subject to Court approval, Defendant does not oppose Plaintiff's assertion that sufficient numerosity exists.

**FRCP 23(a)(2): There are questions of law or fact common to the Class.** The commonality requirement is construed liberally. *Alberto v. GMRI, Inc.*, 252 F.R.D. at 660 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (Rule 23(a)(2) construed "permissively"). The class members' claims must share some substantial issues of law or fact but need not be identical. *Quintero*, 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" satisfies this criterion. *Hanlon,* 150 F.3d at 1019.

Here, Plaintiff and Class Members assert common factual and legal questions, which include whether they were misclassified as overtime exempt and are owed overtime wages as a result pursuant to federal and Nevada state laws, and whether Class Members who are former employees were paid all their wages due and owing at the time of their termination. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp.2d 1053, 1062-63 (N.D. Cal. 2007); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 607 (C.D. Cal. 2005). Based on these common issues, Plaintiff submits this criterion is met. For purposes of approving this Settlement

subject to Court approval only, Defendant does not oppose Plaintiff's assertion that sufficient commonality exists.

**FRCP 23(a)(3): The claims or defenses of the representative parties are typical of the claims or defenses of the class.** Like commonality, the typicality standard is applied "permissive[ly]." *See Staton,* 327 F.3d at 957 (quoting *Hanlon,* 150 F.3d at 1020). It is satisfied if the representatives' claims are "'reasonably coextensive with those of absent class members; they need not be substantially identical.'" (*Id.*)

Here, the claims or defenses of Plaintiff Dempsey and opt-in plaintiff Quinn ("Class Representatives") are typical of the claims or defenses of the Class because all Class Members, including Class Representatives, were ASMs who worked for Defendant in the State of Nevada, at any time from June 20, 2021 through the date the Court grants final approval, and were classified as overtime exempt. (Settlement § 1.3). Accordingly, the Class Representatives have asserted the same alleged wage and hour violations as all other members of the Class. Thus, Plaintiff asserts that their claims are typical of those of the Class. For purposes of approving this Settlement subject to Court approval only, Defendant does not oppose Plaintiff's assertion that sufficient typicality exists.

**FRCP 23(a)(4): The representative party will fairly and adequately protect the interests of the class.** Courts have interpreted this requirement as posing two questions: (1) whether the named plaintiff or their counsel has any conflicts of interest with other class members, and (2) whether the named plaintiff and their counsel will vigorously prosecute the action on behalf of the class. (*See Hanlon* and other cases.) Here, neither named Plaintiff Dempsey, opt-in plaintiff Quinn, nor their counsel have interests antagonistic to those of other Class Members. Plaintiff Dempsey and opt-in plaintiff Quinn share with absent Class Members an interest in recovering compensation that Defendant allegedly denied them due to Defendant's alleged violation of federal and Nevada state wage and hour laws based on the classification of its ASMs as overtime exempt. Additionally, Plaintiff's counsel has extensive experience in wage and hour class actions, as well as class action litigation more generally, and the proposed settlement was reached

only after arm's-length direct settlement discussions. (Settlement § 21; *see also* Jones Dec., ¶ 33.)

        3.     <u>The criteria of FRCP 23(b)(3) are met.</u>

To certify a class under FRCP 23(b)(3), a court must find that common questions of fact or law predominate over questions affecting only individual members of the proposed class, and that a class action is the superior method for fairly and efficiently adjudicating the controversy. FRCP 23(b)(3). Plaintiff submits that both criteria are met here. For the purposes of approving this Settlement subject to Court approval only, Defendant does not oppose such assertion.

***The predominance requirement is met***. The predominance inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2001), *cert. denied*, 534 U.S. 973,122 S. Ct. 395 (2001) ("*Local Joint Executive Bd.*") (quoting *Hanlon*, 150 F.3d at 1022).

As in numerous other wage and hour class actions, the fact that this litigation arises from Defendant's uniform wage-and-hour and overtime policies strongly supports a finding that common issues of law and fact predominate, such that this requirement is satisfied. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 527 F. Supp.2d at 1068; *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958 (C.A.9 2009). Accordingly, Plaintiff argues that common issued of law and fact predominate, and Defendant does not oppose this argument for purposes of settlement approval only.

***The superiority requirement is met.*** Determining whether a class action is the superior method of adjudicating a controversy involves "comparing alternative mechanisms of dispute resolution" as applied to the facts and claims. *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 614 (C.D. Cal. 2005). Plaintiff alleges that the situation here is comparable to that of the Las Vegas Sands' former casino employees who sought damages for failure to provide a statutorily required 60-day notice before closure:

**THIERMAN BUCK**
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class member would recover about $1,330. If plaintiffs cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

*Local Joint Executive Bd.,* 244 F.3d at 1163 ("Class actions … may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985)). In such a situation, the superiority requirement is "easily satisfied." (*Id.*). Plaintiff avers that the same holds true here. Defendant does not oppose such a finding for purposes of this Court's settlement approval only.

### C.    The Proposed Settlement Is Fair, Reasonable, and Adequate.

The *Manual for Complex Litigation* § 21.62 identifies several factors that courts may weigh in determining whether a settlement is fair, reasonable, and adequate (FRCP 23(e)(2)), summarizing the inquiry as follows: Fairness calls for a comparative analysis of the treatment of class members vis-a-vis each other and vis-a-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims, and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process. (*Id.* § 21.62 at 315).

At the preliminary approval stage, courts do not make a final determination of fairness, reasonableness, and adequacy of the proposed settlement. Instead, the key question at this point is only whether the settlement is "potentially fair, as the Court will make a final determination of [the settlement's] adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377, 386 (C.D. Cal. 2007). Thus, the inquiry should focus on whether the proposed settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to class members informing them about the proposed settlement and their options for responding and participating. *Molski v. Gleich,* 318 F.3d 937,944 (9th Cir. 2003);

*see also Manual for Complex Litigation* § 21.632. "Once the judge is satisfied as to the ... results of the initial inquiry into the [1] fairness, [2] reasonableness and [3] adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing. (*Id.* § 21.633 at 321). Plaintiff avers that all three are preliminarily met as follows:

        1.    <u>The Settlement Is Fair.</u>

**Fairness of distribution among Class Members.** A plan of distribution that compensates class members based on the type and extent of their injuries is generally considered reasonable. *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members by awarding a pro rata share' to the class members based on the extent of their injuries.") (Internal citation omitted.). Here, all participating Class Members will receive a Settlement share which will be based proportionately on each Class Member's alleged unpaid overtime compensation from June 25, 2021 through the date of the Final Approval Order, according to time in position and payroll records. (Settlement § 3.2.3). Thus, the Settlement's proposed plan of allocation equitably bases the distribution of Settlement funds on the type and extent of damages suffered by each individual Class Member.

**Fairness of proposed attorneys' fees.** The allocation of total settlement funds between Class Members and Class Counsel is also fair, in that the Settlement provides for Plaintiffs' counsel to seek an amount that is no more than one-third of the Total Settlement Amount in fees. (Settlement § 3.2.1; Jones Dec., ¶ 18). The requested fees are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis. Furthermore, the request aligns with other attorneys' fees awards for wage and hour class actions, particularly where a significant portion of the class members will be receiving substantial Settlement payment amounts of several hundred dollars. Indeed, courts have recognized that an appropriate method for awarding attorneys' fees in class actions is to award a percentage of the "common fund" created as a result of the settlement. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of the common fund/percentage approach is to "spread

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." (*Id.*).

Moreover, several courts have expressed frustration with the alternative "lodestar" approach for determining fee awards, which typically involves reviewing voluminous and often indecipherable time records. Commenting on the loadstar approach, Chief Judge Marilyn Hall Patel wrote in *In re Activision Securities Litigation,* 723 F. Supp. 1373, 1375 (N.D. Cal. 1989):

> This court is compelled to ask, "Is this process necessary?" Under a cost-benefit analysis, the answer would be a resounding, "No!" Not only does the *Lindy Kerr-Johnson* analysis consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be to the detriment of the class members. They are required to wait until the court has conducted a thorough and conscientious analysis of the attorneys' fees petition. Or class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must rely on a lodestar approach, there is little incentive to reach an early settlement.

Indeed, the percentage approach is preferable to the lodestar because: (1) it aligns the interests of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. *In re Activision Securities Litigation*, 723 F. Supp. at 1378–79. Courts now routinely use the percentage of the common fund approach to determine the award of attorneys' fees. (*See, e.g.*, *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378–79 (9th Cir. 1994) (approving attorneys' fees of one-third of the settlement fund).

Class Counsel's application for one-third of the Settlement Funds in this case is within the range of reasonableness. Historically, courts have awarded percentage fees ranging from 20% to 50% of the common fund, depending on the specific circumstances of the case. *Newberg on Class Action* § 14:6 (4th ed. 2008); *see also In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). According to *Newberg*: "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually, 50% of the fund is the upper limit on a

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." *Newberg*, § 14:6. Accordingly, the attorneys' fees sought in this case are fair and reasonable.

**Fairness of proposed Service Awards for Named Plaintiff Dempsey and opt-in plaintiff Quinn**. The principle of fairness is also well-served by the Service Awards proposed for named Plaintiff Dempsey and opt-in plaintiff Quinn. Plaintiff Dempsey sought out Class Counsel, provided employer policies, reviewed all pleadings for factual accuracy, referred potential opt-in plaintiffs to counsel for further investigation of facts, and made himself available to Counsel throughout the litigation and negotiations, putting his responsibility as a representative to his fellow Class Members above his own. *See* Declaration of Brian Dempsey (hereinafter "Dempsey Dec.") at ¶¶ 4-9, 12. Plaintiff Dempsey and opt-in plaintiff Quinn both provided valuable assistance to their counsel in explaining Defendant's alleged compensation policies and procedures, in explaining their job duties as ASMs for Defendant and providing signed declarations outlining those duties for use in the litigation of this action, and in providing information to assist in the settlement negotiations. *See* Dempsey Dec. at ¶¶ 4-9, 12; *see also* Declaration of Toni Quinn (hereinafter "Quinn Dec.") at ¶¶ 4-7. Further, Plaintiff Dempsey incurred personal risk in bringing this lawsuit on behalf of the other persons in the Class. (Dempsey Dec., ¶¶ 10-11). *See, e.g., Koehl v. Verio,* 142 Cal. App. 4th 1313, 1328 (2006) (in wage and hour action where the defendant prevailed at trial, the named plaintiffs were held liable, jointly and severally, for the defendant's attorneys' fees). Additionally, Plaintiff Dempsey and opt-in Plaintiff Quinn have agreed to a general release of claims, which will bar them from suing Defendant for any claims against Defendant related to their employment with Smith's. (Settlement § 5.2.) Moreover, Plaintiff Dempsey could have been held liable for Defendant's costs if he were ultimately unsuccessful in resolving the case. (Dempsey Dec. ¶ 11.) In recognition of these risks, as well as the time-consuming and valuable role that class representatives play in class action litigation, service payments are recognized as serving an essential function in promoting class action settlements. In *League of Martin v. City of*

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

*Milwaukee,* 588 F. Supp. 1004 (E.D. Wis. 1984), the court held that the proposed settlement properly granted the named plaintiff additional relief, explaining that it is "not uncommon for class ... members to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit. *Id.* at 1024. Accordingly, the proposed Service Awards of $▮▮▮ for Dempsey and $▮▮▮ for Quinn are fair.

        2.   <u>The Settlement Is Reasonable.</u>

At $▮▮▮▮▮, the proposed Settlement is reasonable. This is not a settlement where the aggregate figure is large simply because the size of the class is in the tens or hundreds of thousands. Instead, the Class size in this case is small, with around 160 Class Members, and Settlement Class Members are eligible for individual financial benefits based proportionally on their alleged unpaid overtime compensation, according to time in position and Defendant's payroll records. (Settlement § 3.2.3). These considerations indicate that the proposed settlement falls within the range of reasonableness, warranting preliminary approval.

This conclusion is reinforced by considering factors such as the risk that a Class might not be certified pursuant to FRCP 23, or be significantly smaller than proposed, as well as the time, expense, and complexity of further litigation, including the possibility of appellate proceedings by either party. Of particular relevance to the reasonableness of the proposed Settlement are the numerous potentially dispositive defenses advanced including, among other things, the arguments that ASMs were lawfully classified as overtime exempt and thus not eligible to receive overtime compensation. Given the significant legal and factual uncertainty relating to these defenses, the $▮▮▮▮ Settlement represents a reasonable recovery based on the alleged violations. (Jones Dec. ¶¶ 21-22, 33).

Furthermore, while Class Counsel believes that Plaintiff's claims are meritorious, they are experienced class action litigators and understand that the outcome of class certification, trial, and any appeals is inherently uncertain, as well as likely to consume many more months or years. (Jones Dec. ¶ 21). Having reviewed relevant compensation data and employment information, counsel for the Parties—all experienced class action litigators well-versed in wage and hour law—arrived at a reasonable resolution through a protracted arm's-length direct negotiation

1  process, which continued through the negotiation of all details of the Settlement Agreement and

2  ancillary documents. (*Id.*)

3        Another factor considered in approving a settlement is the complexity, expense, and

4  likely duration of the litigation. *Officers for Justice*, 688 F.2d at 625. The Court must weigh the

5  benefits of the proposed settlement against the expense and delay involved in achieving an

6  equivalent or more favorable result at trial. *See, e.g.*, *Young v. Katz*, 447 F.2d 431, 433–34 (5th

7  Cir. 1971). Employment cases, particularly those involving wage and hour disputes, are often

8  expensive and time-consuming. This is a class action that further amplifies the economies of

9  time, effort, and expense achieved by the Settlement. Inevitably, the certification process alone

10 would add time and cost to the litigation process. The Settlement, on the other hand, provides

11 Class Members substantial, prompt, and efficient relief. The Settlement in this case is therefore

12 consistent with the "overriding public interest in settling and quieting litigation" that is

13 "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950

14 (9th Cir. 1976) (footnote omitted); *see also 4 Newberg on Class Actions* § 11.41 (citing cases).

15       Here, the Settlement represents a compromise between experienced counsel for Plaintiffs

16 and Defendant based upon each Party's honest assessment of the legal and factual strengths and

17 weaknesses of their respective position. After accounting for all anticipated fees, costs, and

18 enhancements requested herein, each of the approximately 160 Class Members who submit a

19 completed IRS W-9 from and who do not request to exclude themselves from the Settlement will

20 receive a settlement share based proportionately on each Class Member's alleged unpaid

21 overtime compensation from June 25, 2021 through the date of the Final Approval Order,

22 according to time in position and payroll records. (Settlement § 3.2.3). Basing the Class

23 Members' recovery on time in position and payroll records is a fair and reasonable means to

24 calculate settlement shares because Class Members who worked more will receive a larger

25 payout. This conclusion is reinforced by considering factors such as the risk that a class might

26 not be certified or might be significantly smaller than proposed, as well as the time, expense, and

27 complexity of further litigation. Defendant asserts that it timely paid the Class Members all

28 wages, that overtime exemptions apply to the Class Members, and that penalties are not

**THIERMAN BUCK**
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

applicable to the alleged violations. Defendant further asserts that the matter is not appropriate for class treatment. The claims and defenses at issue in this case would likely result in protracted litigation, extensive class-wide discovery, and a likelihood of appellate proceedings. Ultimately, there were significant remaining risks for both Parties, and the Parties' Settlement represents an adequate and reasonable compromise that falls within the range necessary to support preliminary approval and notification to members of the potential Class for their consideration and response. (Jones Dec. ¶ 21).

### 3.    The Settlement Is Adequate.

As previously mentioned, in a somewhat similar class action, the court aptly observed that it would have been irrational for most, and probably all, class members to pursue their claims on an individual basis "because of the disparity between their litigation costs and what they hope to recover." *Local Joint Executive Bd.*, 244 F.3d at 1163.

The recovery provided through the Settlement is reasonable, primarily as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes.... Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation...." *Officers for Justice,* 688 F.2d at 634 (citation omitted). Accordingly, a settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998). An additional consideration is that a settlement provides for payment to the class now, rather than a payment many years down the road, if ever. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Here, considering the present value of the Settlement sum, the probability of lengthy litigation in the absence of a settlement, and the risks that the Class might not have prevailed at trial, it is no exaggeration to predict that without using the class action process, the relief that members of the Class were likely to achieve individually ranged from negligible to zero. Consequently, the $▇▇▇▇ Settlement satisfies the criterion of adequacy. *See Manual for Complex Litigation* § 21.62 ("Adequacy of the settlement involves a comparison of the relief

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

THIERMAN BUCK
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com

granted relative to what class members might have obtained without using the class action process.").

### D.    The Notice Adequately Informs Class Members of the Settlement.

The Notice explains the claim process, how to request to be excluded or object, and the consequences of the action the Class Member takes (timely submitting a completed IRS W-9 form, doing nothing, opting out, or objecting), in terms of both financial benefit and release of claims. (*See* Settlement at Exhibit A, Notice). The Notice informs Class Members about the final approval hearing, their rights with respect to that hearing, and how to obtain more information. (*Id.*). Likewise, the exclusion process is simple and straightforward. (*Id.*). The 60-day time frame for Class Members is reasonable, allowing Class Members to digest the information in the notice and obtain answers to questions before deciding on the action they want to take. Accordingly, in addition to approving the Settlement as a whole, the Parties respectfully request that the Court approve the Notice and other ancillary forms in substantially the same format as presented with the Settlement.

### E.    Approval and Appointment of Rust Consulting as Settlement Administrator.

The Parties have agreed that Rust Consulting should be appointed as the Settlement Administrator in this case and instructed to carry out the terms of the Settlement. Rust Consulting has committed to effectuating the administration of the Settlement within the costs allocated under the Settlement. Accordingly, Rust Consulting should be appointed as Settlement Administrator, and their fees and costs of up to $█████ should be preliminarily approved.

/ / /

/ / /

/ / /

## V.    CONCLUSION

Based on the information and reasons provided above, the Parties respectfully request that the Court enter the proposed order granting preliminary approval of the class action Settlement attached hereto.

Dated:  August 15, 2025

**THIERMAN BUCK**

/s/      Leah L. Jones
Joshua D. Buck, Nev. Bar No. 12187
Leah L. Jones, Nev. Bar No. 13161
325 W. Liberty St.
Reno, Nevada 89501

*Attorneys for Plaintiff*
*and the Putative Classes*

Dated:  August 15, 2025

**COZEN O'CONNOR**

/s/      Jacob M. Rubenstein
Jonathan A. Rich, Nev. Bar No. 15312
1180 North Town Center Drive, Suite 260
Las Vegas, Nevada 89144

Jacob M. Rubinstein, *Admitted Pro Hac Vice*
4875 East Pearl Circle, Suite 101
Boulder, Colorado 80301

Aaron Holt, *Admitted Pro Hac Vice*
1221 McKinney Street, Suite 2900
Houston, Texas 77010

*Attorneys for Defendant Smith's Food & Drug Centers, Inc.*

**THIERMAN BUCK**
325 West Liberty Street
Reno, NV 89501
Tel: (775) 284-1500 / Fax: (775) 703-5027
Email: info@thiermanbuck.com / Website: www.thiermanbuck.com