UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRIAN DEMPSEY, on behalf of himself and all other similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>SMITH'S FOOD & DRUG CENTERS, INC., and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 3:24-cv-00269-ART-CSD<br><br>ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT<br>(ECF NO. 52) |

Brian Dempsey, an Assistant Store Manager at Smith's Food and Drug Centers, Inc., sues on behalf of himself and similarly situated and typical persons to recover overtime wages under the Fair Labor Standards Act ("FLSA") and state statutory law. (ECF No. 1.) The parties have reached a settlement agreement. (ECF No. 52.) Parties move for conditional certification of the FLSA collective action and Rule 23 class for settlement purposes; preliminary approval of the parties' Settlement Agreement; approval of the notice attached to the settlement and proposed distribution plan; and a final fairness hearing. The motion is GRANTED with additional instructions.

I.   **Procedural Posture**

This action is currently in the first of two stages for approval of a class or FLSA collective settlement. Manual for Complex Litigation (Fourth) § 21.632 (2025); *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008). In the first stage, a court may simultaneously make preliminary determinations that the proposed class can be certified, and that the settlement terms are fair, adequate, and reasonable. *See West v. Circle K Stores, Inc.*, No. 040438, 2006 WL 1652598, at \*2 (E.D. Cal. June 13, 2006) (quoting *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 556 (W.D. Wash. 2004)); *Campbell v. City of Los*

1

*Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018) (explaining a similar procedure for FLSA collective actions).

The second stage of the approval process occurs after notice of the settlement is given to putative class members. At a fairness hearing, the court entertains class members' objections to the treatment of this litigation as a class action and/or to the terms of the settlement. *See Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989). Following the fairness hearing, the court makes a final determination as to whether the parties should be allowed to settle the class action pursuant to the agreed-upon terms. *Alberto*, 252 F.R.D. at 658 (citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 525 (C.D. Cal. 2004)).

## II. Legal Standard

### A. Standard For Class and Collective Certification

A class action will only be certified if it meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) and fits within one of the three subdivisions of Federal Rule of Civil Procedure 23(b). *Id.*

Rule 23(a) restricts class actions to cases where:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

In this case, plaintiff seeks certification under Rule 23(b)(3). A (b)(3) class is generally appropriate when "the actual interests of the parties can be served best by settling their differences in a single action.'" *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir.1998) (internal citation omitted). A class action may be maintained under Rule 23(b)(3) if (1) "the court finds that questions of law or fact common to class members predominate over any questions affecting only

2


individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The standard for certifying FLSA collective actions is similar to the standard for certifying a class under Rule 23(b)(3). The FLSA permits employees to bring collective actions on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 947 (9th Cir. 2019), *disapproved of on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). In the Ninth Circuit, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117. As long as the proposed collective's "factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Id.* at 1114.

### B. Standard for Evaluating the Fairness of a Class Action Settlement at the Preliminary Approval Stage

At the preliminary stage, courts typically determine whether the agreement "falls within the range of possible approval." *Cotter*, 193 F. Supp. 3d at 1035–37 (quoting *In re Tableware Antitrust Litig.*, 484 F.Supp. 2d 1078, 1080 (N.D. Cal. 2007))." Class settlements must be "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e)(2). Although the Ninth Circuit has not specified whether the standard of the district court's fairness review is different at preliminary approval than at final approval, *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035–37 (N.D. Cal. 2016), district courts often state or imply that scrutiny should be more relaxed at the preliminary approval stage than at final approval. *Id.; see, e.g. West*, 2006 WL 1652598, at *9 ("The Court is persuaded that given that some of these factors cannot be fully assessed until the court conducts its fairness

hearing, a full fairness analysis is unnecessary at this stage); *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F.Supp. 2d 708, 714 (E.D. Pa. 2014) ("At the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate' standard is lowered.")

### C. Standard for Evaluating the Fairness of a Class Action Settlement at the Final Approval Stage

At the final approval stage, the parties' agreement is subject to a full fairness analysis. The factors in a court's fairness assessment vary from case to case, but courts generally weigh the eight factors from *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004):

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill*, 361 F.3d at 575).

When it comes time to evaluate the amount offered in settlement, a court should be apprised of "all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 389 (C.D. Cal. 2007) (internal citations omitted). These facts are particularly relevant to courts' assessments of the fourth *Churchill* factor, which typically involves a comparison of the total settlement amount with the likely rewards of litigation. *Id.* (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968)); *Selk v. Pioneers Memorial Healthcare District*, 159 F.Supp. 3d 1164, 1174 (S.D. Cal. 2016).

     Where, as here, a settlement agreement is negotiated prior to formal class certification, courts must also evaluate settlement agreements for evidence of collusion between the plaintiffs' attorneys and the defendant, or other conflicts of interest between the class and their counsel. *In re Bluetooth,* 654 F.3d at 946. The rationale for this additional scrutiny is that "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Id.*

     Courts may find a potential conflict of interest between the class and its counsel where, for example:

(1) Class counsel receive a disproportionate amount of the settlement. Courts may assess the proportionality of attorney's fees using either the lodestar method or the percentage-of-recovery method. *In re Bluetooth,* 654 F.3d at 942. Applying the lodestar method, 25% is typically the "benchmark" for a reasonable fee award. *Id.* Where the parties propose an upwards departure from the 25% benchmark, an explanation is typically required. *Id.; Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

(2) The parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds. *In re Bluetooth,* 654 F.3d at 942. In a clear sailing agreement, the parties agree not to object to attorneys' fees that exceed a certain percentage of the gross settlement amount. *Smothers v. NorthStar Alarm Servs., LLC*, No. 217CV00548KJMKJN, 2019 WL 280294, at *13 (E.D. Cal. Jan. 22, 2019). Such agreements are thought to enable a defendant "to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *In re Bluetooth,* 654 F.3d at 942. (internal citations omitted).

(3) The parties arrange for fees not awarded to revert to defendants rather than to be added to the class fund. *Id.*

### III. Discussion

#### A. The proposed class and collective warrant conditional certification.

The proposed class and collective warrants conditional certification for the purposes of settlement, as the Rule 23(a) and the Rule 23(b)(3) criteria are met, as does the legal definition of FLSA collective.

The proposed class meets the Rule 23(a) criteria of numerosity, commonality, typicality, and adequacy of representation. Here, the settlement class consists of approximately 160 individuals. Plaintiff and Class Members assert common factual and legal questions, such as whether they were misclassified as overtime exempt, whether they are owed overtime wages under federal and state law, and whether Class Members were paid all their wages at the time of their termination. Named Plaintiff Dempsey and opt-in Plaintiff Quinn were, like other class members, Assistant Store Managers employed by the Defendant in the State of Nevada, and classified as overtime exempt in that role. Their claims arise from their terms of employment and the payment of their wages. Neither Plaintiff Dempsey nor Plaintiff Toni Quinn have known conflicts of interest with unnamed class members. Plaintiffs' counsel has extensive experience in wage and hour class actions, as well as class actions more generally, and the proposed settlement appears to be the result of arm's-length direct settlement discussions. (ECF Nos. 52-1, 52-5).

The proposed class also appears to meet the requirements of Fed. R. Civ. P. 23(b)(3), as common questions of fact or law predominate over questions affecting only individual members of the proposed class, and a class action is the superior method for fairly and efficiently adjudicating this controversy. Common issues of law and fact predominate because this litigation arises from Defendant's uniform wage-and-hour and overtime policies. A class action is the superior method for prosecuting this suit because this case involves up to 160 different claims, some

6

of which may involve amounts of money that are smaller than the cost of litigating on an individual basis.

Plaintiffs are "similarly situated" and may proceed as an FLSA collective. Class members' claims share common issues of law and fact relating to their wages and overtime pay, which are governed by the FLSA. *See Campbell*, 903 F.3d at 1117.

### B. The proposed settlement warrants preliminary approval.

The proposed settlement will be preliminarily approved, as it appears to be fair, reasonable, and adequate. It compensates class members based on their alleged unpaid overtime compensation during the relevant time period. The proposed service awards to Named Plaintiff Dempsey and opt-in Plaintiff Quinn are reasonable given the assistance they have rendered to the entire class. The proposed total settlement amount of $450,000 appears to be within the range of reasonableness considering the risks and expenses of litigation.

The Court will reserve a more thorough inquiry under *Churchill* and *In Re Bluetooth* for the final fairness hearing and related motions.

### IV. CONCLUSION

The parties' Joint Motion for Preliminary Approval of Collective and Class Action Settlement (ECF No. 52) is therefore GRANTED.

The parties' Joint Motion for Preliminary Approval of Collective and Class Action Settlement (redacted version) (ECF No. 50) is DENIED AS MOOT.

The proposed settlement class satisfies the requirements of a class action settlement class under Fed. R. Civ. P. 23 and a collective action settlement class under section 16(b) of the Fair Labor Standards Act, 29 U.S.C. §216(b), because the class members are readily ascertainable, and a well-defined community of interest exists in the common questions of law and fact affecting the Parties.

The following class of persons are certified in this action solely for the purposes of the Settlement:

>Individuals who worked as ASMs at Smith's in the State of Nevada between June 25, 2021 and the date of the Court's Final Approval Order and who did not opt into the *Lovendahl* Lawsuit.

The Parties' Settlement Agreement (the "Settlement") is granted preliminary approval as it meets the criteria for preliminary settlement approval. The Settlement falls within the range of possible approval as fair, adequate, and reasonable to all potential members of the Settlement Class when balanced against the probable outcome of further litigation, and ultimately relating to liability and damages issues, and appears to be the product of arm's length and informed negotiations.

The Parties' proposed notice plan is constitutionally sound because individual notices will be mailed to all class members whose identities are known to the Parties, and such notice is the best notice practicable. The Parties' proposed Notice Mailings: (i) Notice of Proposed Settlement of Class Action, Conditional Certification of Settlement Class, Preliminary Approval of Settlement, and Hearing Date for Final Court Approval, (Mailing #1) and (ii) proposed Change of Name/Address Information Form (Mailing #2) (together the "Notice Packet") are sufficient to inform members of the Class of the terms of the Settlement, their rights under the Settlement, their rights to object to the Settlement, their right to receive a proportionate Settlement Share or opt-out and not to participate in the Settlement, and the processes for doing so, and the date and location of the final approval hearing, and therefore are approved.

Any member of the Class who submits a timely W-9 Form within sixty (60) days after the date the Settlement Administrator mails the Notice Packet will receive a Settlement Share.

Those members of the Class who wish to comment on, object to or opt-out of the Settlement have until sixty (60) days after the mailing of the Class Notice

1 Packet to submit their comments, objection or opt-out notice pursuant to the
2 procedures set forth in the Class Notice.

3     Rust Consulting, Inc. is appointed to act as the Settlement Administrator,
4 pursuant to the terms set forth in the Settlement.

5     Within thirty (30) days of the Court's Preliminary Approval Order, the
6 Settlement Administrator shall mail each Class Member and Representative
7 Plaintiff, via First Class Mail, a copy of the Notice Packet, including a W-9 Form.

8     Defendant is directed to provide the Settlement Administrator as soon as
9 possible using best efforts, and in no event later than ten (10) business days after
10 the date of this order, the Class Data as specified by the Settlement Agreement
11 and Plaintiffs' Class Counsel shall provide to the Settlement Administrator any
12 and all information regarding current addresses of class members.

13     Plaintiff Brian Dempsey is appointed as Class Representatives along with
14 Consent to Join, Declarant Plaintiff Toni Quinn. The Court preliminarily approves
15 a Class Representative Payment in the amount of $15,000.00 to Plaintiff
16 Dempsey, and $2,500.00 to Plaintiff Quinn.

17     Joshua Buck and Leah L. Jones of Thierman Buck are appointed Class
18 Counsel, and the Court preliminarily approves their attorneys' fee request of no
19 more than $150,000.00 and litigation costs not to exceed $5,000.00.

20     As stated in the Parties' joint motion, the instant action is a Rule 23 class
21 action subject to the notice requirements of the Class Action Fairness Act (CAFA),
22 28 U.S.C. § 1715(b).

23     Within ten (10) business days of the Parties' filing of the joint motion,
24 Defendant shall serve upon the appropriate State official of each State in which
25 a class member resides, and the appropriate Federal official, a notice of the
26 Settlement consistent with the requirements enumerated by 28 U.S.C. §
27 1715(b)(1)–(8). The Court may not issue an order granting final approval of the
28 Settlement earlier than ninety (90) days after service of the notice of Settlement

9

1  upon the appropriate State and Federal official.

2  Thus, a final hearing will be held in this department on May 11, 2026 at 10:00 a.m. in Reno Courtroom 6 to determine: (1) whether the proposed Settlement is fair, reasonable, and adequate and should be finally approved by the Court; (2) the amount of attorney's fees and litigation costs to award to Class Counsel; (3) the amount to be paid to the Claims Administrator; and (4) the amount of the Incentive Payments for the Class Representatives. The Court will hear all evidence and argument necessary to evaluate the Settlement and Class Members and their counsel may support, oppose, or comment upon the Settlement if they so desire, as set forth in the Class Notice.

Any Class Member may appear at the final approval hearing in person or by his or her own attorney and show cause why the Court should not approve the Settlement or object to the award of the Class Representative Payment or the Class Counsel Fees and Costs. For any comments or objections to be considered at the hearing, the Class Member must file written objections and/or comments with the Clerk of Court setting forth the nature of his/her comments, support or objection, and serve the same on counsel for the parties not later than sixty (60) calendar days after the Settlement Administrator mails the Class Notice Packets.

All papers filed in support of final approval of the settlement, and response to any objections, will be filed no later than fourteen (14) days prior to the date of the final fairness hearing.

Dated this 10th day of December, 2025

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE